UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/13/2025
```

—————————————————————

RALPH PALLADINO,

                    Plaintiff,

        - against -

AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, and CARLA
INSINGA,

                    Defendants.

—————————————————————

24 Cv. 5755 (VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Plaintiff Ralph Palladino ("Palladino") is a retired union officer who brought this action against defendants American Federation of State, County, and Municipal Employees ("AFSCME"), a national labor union, and Carla Insinga ("Insinga," and together with AFSCME, "Defendants"), the chairperson of AFSCME's Judicial Panel. (See Dkt. No. 1.) Palladino alleges that Defendants' disciplinary proceeding against him – which found that Palladino had improperly received a compensatory time payout upon his retirement – violated Section 101(a)(5)(C) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(5)(C), and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (See "Compl.," Dkt. No. 4.) Defendants now move to dismiss the Complaint in its entirety for failure to state a claim pursuant to Federal

Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See Dkt. No. 16 [hereafter "Defendants' Motion" or "Defs.' Mot."].)

For the reasons discussed below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion to dismiss the LMRDA claim is **GRANTED**. The LMRA claim is **DISMISSED** *sua sponte* for lack of subject matter jurisdiction and thus Defendants' Motion to dismiss the LMRA claim is **DENIED** as moot. Accordingly, the Complaint is **DISMISSED** without prejudice.

## I.    <u>BACKGROUND</u>[1]

AFSCME is comprised of a national chapter,[2] regional district councils, and local unions. (See Compl. ¶ 5.) On or around March 31, 1979, Palladino was employed by the City of New York and shortly thereafter became a member of AFSCME and its local union, the Clerical Administrative Employees, New York, New York, Local 1549 ("Local 1549"), which is affiliated with New York District Council 37 ("DC 37"). (See <u>id.</u> ¶ 8.)

---

[1] The following facts are taken from Palladino's Complaint, which the Court must take as true for purpose of resolving Defendants' motion to dismiss. See <u>Safka Holdings LLC v. iPlay, Inc.</u>, 42 F. Supp. 3d 488, 491 (S.D.N.Y. 2013). Where indicated, the Complaint's factual allegations are supplemented by facts and information drawn from documents appended to the Complaint, which are properly before the Court. See <u>Tannerite Sports, LLC v. NBCUniversal Media LLC</u>, 135 F. Supp. 3d 219, 225 n.1 (S.D.N.Y. 2015).

[2] Although Palladino alleges that AFSCME is a national union, (see Compl. ¶ 5), the AFSCME Constitution refers to AFSCME as an international union and uses corresponding terminology. (See "AFSCME Const.," Dkt. No. 4-10.) For the sake of clarity, the Court occasionally uses the AFSCME Constitution's international terminology when discussing certain constitutional provisions.

Over the years, Palladino held a series of posts within Local 1549 and DC 37 and was an AFSCME convention delegate. (See id. ¶¶ 10-16.) Palladino also served as the Second Vice President of Local 1549 between late 2009 until his retirement on December 2, 2021. (See id. ¶¶ 10-14, 57.) Upon his retirement, Palladino ceased to be a member of Local 1549 and joined the DC 37 Retirees Association. (See id. ¶¶ 4, 69.)

A.   COMPENSATORY TIME POLICIES

Local 1549 had a longstanding policy of paying its retiring officers for unused compensatory time, with all disbursements calculated and approved by the Business Manager of Local 1549. (See id. ¶¶ 27-28.) Officers of Local 1549, such as the Second Vice President, earned compensatory time on a day-for-day ratio for each day the officer was required to participate in union-related activities, such as conferences or trainings when the office was closed, as these events generally occurred on weekends and holidays. (See id. ¶¶ 17-19.) However, during Palladino's tenure as Second Vice President, Local 1549 enacted several policy changes concerning compensatory time upon an officer's retirement.

On January 22, 2015, Local 1549 announced a new policy (the "January 2015 Policy") regarding compensatory time, citing financial burdens: any retiring officer would be compensated for a maximum of 130 days of unused vacation and

compensatory days, with any excess days to be forfeited.[3] (See id. ¶ 24; see also "Jan. 2015 Policy," Dkt. No. 4-1 at 2.[4]) The January 2015 Policy also urged Local 1549 staff with over 130 unused days to reduce their balances as soon as possible to avoid any forfeiture. (See Jan. 2015 Policy at 2.)

On August 12, 2020, Local 1549 implemented a revised policy (the "August 2020 Policy") that increased the compensation limit to 365 days of unused compensatory and vacation days upon retirement. (See Compl. ¶ 25; see also "Aug. 2020 Policy," Dkt. No. 4-2 at 3.) The August 2020 Policy also requested that all Local 1549 staff reserve no more than twenty days of compensatory time and anyone with over twenty days was advised to use this time within four months. (See Aug. 2020 Policy at 3.)

On June 7, 2021, Local 1549 rescinded the August 2020 Policy and reverted to the 130-day limit upon retirement (the "June 2021 Policy"). (See Compl. ¶ 26; see also "June 2021 Policy," Dkt. No. 4-3 at 4.) The June 2021 Policy also requested that any Local 1549 staff with over twenty days of

---

[3] The Complaint does not allege any facts regarding Local 1549's compensatory time policy prior to the January 2015 Policy.

[4] For the sake of clarity, the Court cites to the ECF page numbers for all exhibits appended to the Complaint except for the AFSCME Constitution, the Local 1549 Constitution, (see "Loc. 1549 Const.," Dkt. No. 4-4), and the AFSCME Financial Standards Code. (See "AFSCME Fin. Standards Code," Dkt. No. 4-15.)

compensatory time use this time within five months. (<u>See</u> June 2021 Policy at 4.)

Upon his retirement from Local 1549 in December 2021, Palladino received a retirement severance package in January 2022, which included $29,980.55 for forty-three unused compensatory days accrued throughout his tenure as Second Vice President: nine days from 2017, fifteen days from 2018, nine days from 2019, three days from 2020, and seven days from 2021. (<u>See</u> Compl. ¶¶ 58, 64.) The Business Manager of Local 1549 calculated and approved Palladino's compensatory days payout. (<u>See</u> <u>id.</u> ¶ 56-60.)

B.    <u>UNION PROCEEDINGS</u>

In May 2022, AFSCME conducted an audit of Local 1549. (<u>See</u> <u>id.</u> ¶ 70.) In September 2022, AFSCME published a draft audit (the "Draft Audit"), which revealed various forms of financial mismanagement within Local 1549 in violation of the AFSCME Financial Standards Code. (<u>See</u> <u>id.</u> ¶ 71; <u>see</u> <u>also</u> "Draft Audit," Dkt. No. 4-7.) Based on the findings of the Draft Audit, AFSCME placed Local 1549 in an administratorship and suspended all incumbent officers. (<u>See</u> Compl. ¶ 74.) On October 4, 2022, AFSCME held a hearing (the "Administratorship Hearing") as to the propriety of the administratorship, with Insinga presiding over the proceeding. (<u>See</u> <u>id.</u> ¶ 75.) In a written decision issued on

October 28, 2022, Insinga held that the administratorship over Local 1549 was valid. (See id. ¶ 76; see also "Administratorship Decision," Dkt. No. 4-8.) Insinga found that (1) the Draft Audit was reliable evidence that Local 1549 committed numerous violations of the AFSCME Financial Standards Code, (2) the witness testimony at the hearing was consistent with the findings in the Draft Audit, and (3) Local 1549's opposition report was also consistent with the Draft Audit because the report was limited to proposed remedial measures and did not dispute past conduct. (See Administratorship Decision at 11-13.)

On or about September 18, 2023, Local 1549 members Anthony Lackhan ("Lackhan"), Honda Wang ("Wang"), Alvin Carter ("Carter"), and Stephanie Ramirez ("Ramirez") (together, the "Charging Parties") filed internal union charges (the "Charges") against former officers of Local 1549, including Palladino, in connection with the Draft Audit. (See Compl. ¶ 78; see also "Sept. 2023 Charges," Dkt. No. 4-9 at 5-6.) As relevant to Palladino, the Charges alleged that Local 1549 had (1) issued an unauthorized severance payment to Palladino, thereby depleting union funds, and (2) improperly rescinded a compensatory time policy. (See Compl. ¶ 84; Sept. 2023 Charges at 5-6.) The Charges alleged that this conduct violated various union rules, including the

AFSCME Financial Standards Code, which were cited in the Charges. (See Sept. 2023 Charges at 5-6.)

Also on September 18, 2023, the Charges were served on Palladino and the other accused parties with instructions on trial procedures and noting that AFSCME had assumed original jurisdiction over the disciplinary proceeding. (See Sept. 2023 Charges at 3-4.) On October 4, 2023, the parties were informed that the disciplinary hearing would take place on November 20, 2023. (See "Ex. K," Dkt. No. 4-11 at 3-4.) On or about October 5, 2023, Insinga was appointed as the trial officer for the disciplinary hearing. (See Compl. ¶ 97.)

On October 10, 2023, Palladino received service of the Charges. (See id. ¶ 94.) On October 24, 2023, Palladino objected to any member of the AFSCME Judicial Panel, including Insinga, who had heard evidence regarding the Local 1549 administratorship from serving as the trial officer. (See id. ¶ 99; "Ex. L," Dkt. No 4-12 at 3.) On November 13, 2023, Palladino filed a request to call as witnesses (1) all Charging Parties, and (2) the authors of the Draft Audit. (See Compl. ¶¶ 104-06; "Ex. M," Dkt. No. 4-13 at 3-4.) Palladino also requested production of the following documents: (1) the final audit report, (2) the Administratorship Hearing transcript, (3) all exhibits, documents, or legal memoranda offered during the

7

Administratorship Hearing, and (4) the Local 1549 Delegate Assembly meeting minutes from 2009 to 2022 where a vote was conducted on salary or other financial payments to Local 1549 officers. (See Compl. ¶ 107; Ex. M at 3-4.) Palladino did not receive the requested documents before or during the hearing. (See Compl. ¶ 108.)

On November 20, 2023, the disciplinary hearing took place via Zoom, with Insinga presiding over the proceeding. (See id. ¶ 102; "Hearing Decision," Dkt. No. 4-16 at 3.) All testimony was given under oath and a complete transcript of the proceeding was made by a professional court reporter. (See Hearing Decision at 3.) During the hearing, Wang testified on behalf of the Charging Parties and introduced evidence in support of the allegations that the accused parties had committed various financial improprieties as outlined in the Draft Audit. (See id. at 4.)

Palladino was present at the hearing, submitted evidence into the record, and testified on his own behalf. (See id. at 4, 20-22.) Wang cross-examined Palladino, (see id. at 22), and Palladino cross-examined Wang as the representative of the Charging Parties. (See Compl. ¶ 117.) Palladino called Lackhan as a witness, but Insinga advised Lackhan that he was not required to testify. (See id. ¶ 112.) Lackhan subsequently declined to testify but remained present during the hearing.

(See id.) Carter was initially present at the hearing but did not testify and left before Palladino had an opportunity to call him as a witness. (See id. ¶ 111.) Insinga dismissed Carter as a Charging Party because he did not attend the entire hearing, as required by the AFSCME Constitution. (See Hearing Decision at 3-4.) The authors of the Draft Audit did not appear during the hearing. (See Compl. ¶ 114.)

On January 11, 2024, Insinga issued a written decision on the Charges. (See id. ¶ 118; see also Hearing Decision.) As relevant here, Insinga found Palladino guilty of violating Article V of the AFSCME Financial Standards Code, concluding that Palladino's compensatory time payment did not comply with union rules regarding proper disbursement of union funds and that in receiving the payment, Palladino breached his fiduciary duty as an officer of Local 1549. (See Hearing Decision at 29-33.) Insinga ordered Palladino to restitute $29,980.55 - the amount he improperly received for his unused compensatory days - and expelled Palladino from union membership. (See id. at 40.)

Palladino appealed Insinga's decision on February 4, 2024, and the appeal was denied on May 18, 2024 (the "May 2024 Denial"). (See Compl. ¶ 126.) Palladino then appealed the May 2024 Denial, which remains pending. (See id.)

C.   THE PRESENT ACTION

Palladino filed this lawsuit against Defendants on August 7, 2024. (See Dkt. No. 1.) The Complaint sets forth two causes of action: (1) Palladino did not receive a full and fair trial in violation of Section 101(a)(5)(C) of the LMRDA, and (2) Defendants materially violated the AFSCME Constitution in violation of Section 301 of the LMRA. (See Compl. ¶¶ 127-133.) Palladino seeks a declaratory judgment stating that (1) Palladino did not receive a full and fair trial as required by the LMRDA and the LMRA, (2) Palladino has been and is a full member of AFSCME, voiding the requirement that he reimburse AFSCME any monies to be given membership status, and (3) Palladino not be retried by the union or, in the alternative, if Palladino is retried, that Insinga cannot serve as the trial officer and that Palladino will receive a full and fair hearing. (See id. at 27-28.)

The parties exchanged pre-motion letters pursuant to the Court's Individual Practices in anticipation of Defendants' Motion to dismiss. (See Dkt. No. 12.) Unable to resolve the dispute through pre-motion letters, Defendants subsequently filed their Motion with an accompanying memorandum of law, (see "Defs.' Mem.," Dkt. No. 18), to which Palladino filed an opposition, (see "Pl.'s Opp'n," Dkt. No. 23), and Defendants filed a reply. (See "Defs.' Reply," Dkt. No. 24.)

## II.  <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint states "'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct" — there is not "a probability requirement at the pleading stage." <u>Lynch v. City of New York</u>, 952 F.3d 67, 75 (2d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 556); <u>see Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "In other words, a complaint should not be dismissed when the factual allegations sufficiently 'raise a right to relief above the speculative level.'" <u>Liboy v. Russ</u>, No. 22 Civ. 10334, 2023 WL 6386889, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting <u>Twombly</u>, 550 U.S. at 555).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."

Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (citation omitted). The Court may also "consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a [Rule] 12(b)(6) motion." Garcia v. Lewis, No. 05 Civ. 1153, 2005 WL 1423253, *3 (S.D.N.Y. June 16, 2005).

### III. DISCUSSION

A. LMRDA

Defendants argue that (1) Palladino does not have standing to bring a claim under the LMRDA because he was not a member of Local 1549 at the time of the disciplinary proceeding, and (2) even if Palladino has standing, he fails to state a claim under the LMRDA because Palladino has not sufficiently alleged that the disciplinary proceeding resulted in any "breach of fundamental fairness." (See Defs.' Mem. at 10-16; Defs.' Reply at 3-8.) Given the jurisdictional implications, the Court first addresses the issue of standing before turning to other procedural hurdles and the merits of Palladino's LMRDA claim. See Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008).

1. Standing

Title I of the LMRDA "grants federal courts only the limited authority to hear suits by plaintiffs against a union

of which plaintiffs are members." Phelan v. Local 305 of United Ass'n of Journeymen, 973 F.2d 1050, 1055 (2d Cir. 1992); Brady v. International Bhd. of Teamsters, 741 F.3d 387, 389 (2d Cir. 2014) ("[S]ubject matter jurisdiction under the LMRDA exists only where the plaintiff is a member of the defendant union."). "It is well settled that only a member of a labor organization has standing to enforce the rights guaranteed by [the LMRDA]." Thomason v. Amalgamated Loc. No. 863, 438 F. App'x 358, 361 (6th Cir. 2011) (citation omitted).

Section 101(a)(5)(C) of Title I of the LMRDA provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . by such organization or by any officer thereof unless such a member has been . . . afforded a full and fair hearing." 29 U.S.C. § 411(a)(5)(C). The LMRDA defines "member" to "include[] any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings." 29 U.S.C. § 402(o).

A plaintiff has standing under the LMRDA if he was a member of the disciplining labor organization at the time of the adverse action, even if the action resulted in his expulsion from union membership. See Building Material & Dump

Truck Drivers, Loc. 420 v. Traweek, 867 F.2d 500, 510 (9th Cir. 1989) (expelled or suspended members challenging the lawfulness of the union proceedings against them had standing to sue under the LMRDA because otherwise, "[u]nions could silence dissent by expelling unruly members at unfair hearings in complete disregard of the purposes and prohibitions of [the LMRDA]"); Leonard v. United Ass'n of Journeymen, No. 15 Civ. 256, 2016 WL 319867, at *5 (S.D. Ohio Jan. 26, 2016) (plaintiff was not a member when the union denied his request for membership reinstatement - and thus did not have standing to challenge the union's reinstatement decision - because plaintiff was previously expelled from membership and did not challenge the validity of his expulsion).

Ultimately, whether Palladino has standing under the LMRDA depends on whether he has plausibly alleged membership of a relevant union body at the time of the disciplinary hearing. See 29 U.S.C. §§ 402(o), 411(a)(5)(C). At the motion to dismiss stage, Palladino "bears the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue" under the LMRDA. Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (quoting Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 417 (2d Cir. 2015)). Assessing plausibility is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Given that Palladino was not a member of Local 1549 at the time of the disciplinary action, (see Compl. ¶ 69), the Court examines whether Palladino has sufficiently alleged membership of a qualifying union body to have standing under the LMRDA. The Court addresses the significance of the DC 37 Retirees Association and AFSCME in turn.

### a. DC 37 Retirees Association Membership

The parties dispute the implications of Palladino's membership of the DC 37 Retirees Association. Defendants argue that Palladino does not have standing as a member of the DC 37 Retirees Association because the DC 37 Retirees Association does not qualify as a labor organization under the LMRDA. (See Defs.' Mem. at 10–11; Defs.' Reply at 3–5.) Palladino does not dispute that his membership of the DC 37 Retirees Association, alone, is insufficient to confer standing. Rather, Palladino argues that he has standing under the LMRDA because his membership of the DC 37 Retirees Association supports the inference that he was also a member of AFSCME at the time of the disciplinary proceeding. (See Pl.'s Opp'n at 2–3.)

First, whether the DC 37 Retirees Association qualifies as a labor organization is irrelevant to the standing inquiry

because Palladino was disciplined by AFSCME and Insinga, an officer of AFSCME, not the DC 37 Retirees Association. <u>See</u> 29 U.S.C. § 411(a)(5)(C). (<u>See</u> Compl. ¶¶ 79, 118-20.) Thus, the relevant question is whether Palladino was a member of AFSCME – the disciplining organization - at the time of the disciplinary hearing. <u>See</u> 29 U.S.C. § 411(a)(5)(C). (<u>See</u> Compl. ¶¶ 6-7, 79, 118-20.)

Second, Palladino's argument that his AFSCME membership can be inferred from his membership of the DC 37 Retirees Association falls short because whether members of a local union are also members of the national union is generally dictated by the union constitution. <u>See</u> <u>Corns v. Laborers Int'l Union of N. Am.</u>, 709 F.3d 901, 912 (9th Cir. 2013). Palladino does not allege any facts that suggest that membership of the DC 37 Retirees Association is synonymous with membership of AFSCME and the excerpts of the AFSCME Constitution accompanying the Complaint do not address this question. "[T]he tenet that a court must accept a complaint's allegations as true is not without its limits," <u>Diascience Corp. v. Blue Nile, Inc.</u>, No. 08 Civ 9751, 2009 WL 1938970, at *2 (S.D.N.Y. July 7, 2009) (citation omitted), and "does not extend to legal conclusions." <u>Lee v. Canada Goose US, Inc.</u>, No. 20 Civ. 9809, 2021 WL 2665955, at *4 (S.D.N.Y. June 29, 2021). Palladino's unsupported and conclusory notion that

his membership of the DC 37 Retirees Association evinces membership of AFSCME is insufficient to plausibly suggest that Palladino has standing under the LMRDA.

### b. AFSCME Membership

In the Complaint, Palladino does not explicitly state whether he remained a member of AFSCME following his retirement from Local 1549. Palladino argues that, despite this lack of clarity, he has plausibly alleged facts to infer his AFSCME membership at the time of the disciplinary hearing because (1) AFSCME could not have disciplined Palladino as a non-member, and (2) Palladino's AFSCME membership was terminated as a result of the disciplinary hearing when he was found guilty. (See Pl.'s Opp'n at 2-3.) Defendants do not address Palladino's membership of AFSCME. Instead, Defendants insist that Palladino's retirement from Local 1549 precludes standing under the LMRDA. (See Defs.' Mem. at 10-11.) For the reasons explained below, the Court finds that Palladino has sufficiently alleged membership of AFSCME to avoid dismissal for lack of standing.

At the outset, the Court rejects Palladino's argument that he was necessarily a member of AFSCME at the time of the hearing because a union cannot discipline non-members. (See Pl.'s Opp'n at 3.) The AFSCME Constitution permits disciplinary charges against an individual for actions taken

while he was member of AFSCME or a subordinate body, regardless of the individual's current membership status. (See AFSCME Const., art. X, § 1.) Thus, under the AFSCME Constitution, Palladino was lawfully charged for actions taken while he was a member of Local 1549 and AFSCME.[5] (See Hearing Decision at 31-33.) And ultimately, whether Palladino could be charged for actions taken while he was a member of both Local 1549 and AFSCME does not clarify whether Palladino was a member of AFSCME at the time of the disciplinary hearing, which is the relevant inquiry here.

Given the sparse allegations in the Complaint, whether Palladino's retirement from Local 1549 impacted his AFSCME membership is a closer question. Defendants argue that Palladino's retirement from Local 1549 precludes standing because retired union members generally do not have standing to sue under the LMRDA. (See Defs.' Mem. at 10-11.) As a general matter, retirement does not automatically terminate an individual's union membership unless (1) a provision of the union's constitution terminates membership upon retirement, or (2) the individual clearly terminates his membership voluntarily. See Vandermark v. Law Enf't Emps.

---

[5] Although Palladino received his severance package when he was no longer a member of Local 1549, Insinga found that Palladino disregarded the June 2021 Policy while he was an officer of Local 1549 in violation of Article V of the AFSCME Financial Standards Code. (See Hearing Decision at 33.)

Benevolent Ass'n, No. 15 Civ. 0483, 2021 WL 4710795, at *4-7
(S.D.N.Y. Oct. 6, 2021) (no standing where retired plaintiffs
sent letters to the union resigning their memberships and
stopped paying dues, which was required for membership);
Dobson v. Chicago & Ne. Ill. Dist., United Bhd. of Carpenters,
716 F. Supp. 1096, 1098 (N.D. Ill. 1989) (holding retirees
continue to be members under the LMRDA unless reasonable union
rules exclude them).

Viewing the Complaint in the light most favorable to
Palladino, for the reasons explained below, the Court finds
that the affirmative allegations support the reasonable
inference that Palladino was a member of AFSCME at the time
of the disciplinary hearing. Further, there is no indication
that Palladino voluntarily withdrew his AFSCME membership or
that union rules automatically terminated Palladino's AFSCME
membership upon his retirement from Local 1549.

Palladino alleges that he became a member of both AFSCME
and Local 1549 shortly after his employment began on March
31, 1979, and ceased to be a member of Local 1549 upon his
retirement on December 2, 2021. (See Compl. ¶¶ 8, 69.)
Although the Complaint does not explicitly address whether
Palladino's retirement from Local 1549 modified or terminated
his AFSCME membership status, Palladino alleges that he was
expelled from AFSCME as a result of the disciplinary hearing,

suggesting that Palladino remained a member of AFSCME
following his retirement from Local 1549. (See id. ¶ 119.)
Insinga's written decision is consistent with Palladino's
allegation that he was expelled from AFSCME as a result of
the disciplinary hearing. (See Hearing Decision at 40.)
Moreover, Palladino's prayer for relief seeks a declaration
that Palladino has been and is a full member of AFSCME. (See
Compl. at 27-28.) As a matter of common sense, Palladino seeks
reinstatement of his AFSCME membership status to redress his
expulsion from the union, not because he voluntarily withdrew
his AFSCME membership upon retirement. See Paul v. Winco
Holdings, Inc., 249 F.R.D. 643, 652 (D. Idaho 2008) (plaintiff
was a union member because there was no indication that
plaintiff had voluntarily withdrawn his union membership when
he was terminated from his employment, which was further
supported by his prayer for relief to be reinstated as an
employee). Based on the expulsion allegations and the
requested relief, the Court is satisfied that Palladino has
affirmatively alleged facts that plausibly suggest that he
retained his AFSCME membership until his expulsion from the
union.

The Court is not persuaded by Defendants' argument that
Palladino's retirement from Local 1549 necessarily precludes
standing under the LMRDA. Defendants have not pointed to any

20

provision in the AFSCME Constitution that suggests that an individual's retirement from a subordinate body necessarily terminates his AFSCME membership. See <u>Martin v. Local 101, Transp. Workers Union</u>, No. 91 Civ. 1871, 1992 WL 394175, at *6-8 (E.D.N.Y. Dec. 9, 1992) (rejecting local union's position that plaintiff's membership automatically terminated when he was discharged from the international union because "the [Local] Union can point to no provision in its constitution or by laws" that "provides for automatic termination of membership"). Because the "LMRDA recognizes the right of unions to choose their own members and does not prescribe requirements for membership," <u>id.</u> at *6, whether Palladino's AFSCME membership automatically terminated upon his retirement from Local 1549 is a factual inquiry that likely turns on AFSCME's bylaws and other provisions of the AFSCME Constitution, neither of which are before the Court. See <u>Leonard</u>, 2016 WL 319867, at *5 ("An individual's membership status is determined by reference to the union's constitution and bylaws.").

And where "specific procedures for resignation are absent from [a union constitution or bylaws], resignation may be accomplished in any manner sufficient to show a voluntary decision to part with union membership." <u>International Bhd. of Boilermakers v. Local Lodge D129 of Cement</u>, 910 F.2d 1056,

1060 (2d Cir. 1990) (citation omitted). Here, there is no indication that Palladino voluntarily terminated his AFSCME membership upon his retirement from Local 1549. Rather, the allegations suggest that Palladino's AFSCME membership was involuntarily terminated when he was expelled from the union. See Kovach v. Service Pers. & Emps. of the Dairy Indus., Loc. Union No. 205, 58 F. Supp. 3d 469, 483 (W.D. Pa. 2014) (plaintiff had standing under the LMRDA because whether plaintiff had voluntarily or involuntarily withdrawn from union membership was an issue of material fact); cf. Vandermark, 2021 WL 4710795, at *4-7 (voluntary termination of union membership was evidenced by plaintiffs' letters explicitly resigning their union memberships upon retirement and plaintiffs' subsequent failure to pay union membership dues). Given the Complaint's affirmative allegations, any factual uncertainties regarding Palladino's continued membership of AFSCME as a retiree cannot be resolved at this stage of the litigation.

Drawing all inferences in favor of Palladino, Palladino has alleged facts that "provide a plausible basis to suggest that [Palladino] has standing, which is all that is required at this point." Lipstein v. 20X Hosp. LLC, No. 22 Civ. 04812, 2023 WL 6124048, at *10 (S.D.N.Y. Sept. 19, 2023). Thus, for

the reasons explained above, Palladino has standing to bring a claim under the LMRDA.

2.    Exhaustion of Internal Union Remedies

Although not an issue raised by the parties, the Court is mindful that Palladino may not have properly exhausted his internal union remedies before pursuing this action. (See Compl. ¶ 126.) Title I of the LMRDA requires union members to first "exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations." 29 U.S.C. § 411(a)(4); Schermerhorn v. Local 100, Transp. Workers Union of Am., 91 F.3d 316, 325 (2d Cir. 1996) (union members are required to exhaust intra-union remedies "provided that a four month lapse of time has not been exceeded in exhausting the procedures"). Ultimately, "[t]he requirement that a plaintiff exhaust internal union remedies under the LMRDA lies within the court's discretion." Paulino v. New York Printing Pressman's Union, Loc. Two, 301 F. App'x 34, 38 (2d Cir. 2008).

Article X, Section 17 of the AFSCME Constitution – which is before the Court - outlines the available appellate procedures within the union: (1) decisions may be appealed to the Judicial Panel, (2) decisions of the Judicial Panel may

be appealed to the full Judicial Panel, and (3) decisions of the full Judicial Panel may be appealed to the International Convention for final resolution. (See AFSCME Const., art. X, § 17.) Neither the Complaint nor the accompanying excerpts of the AFSCME Constitution address whether members must exhaust certain internal remedies before pursuing legal action. However, at least one federal court has noted that the AFSCME Constitution requires members to exhaust all available appeals before filing a lawsuit. See Conille v. Council 93, Am. Fed'n of State, Cnty. & Mun. Emps., 935 F.3d 1, 8 n.11 (1st Cir. 2019) (recognizing that Article XII, Section 10 of the AFSCME Constitution includes an exhaustion requirement, which states that "[n]o member or subordinate body shall institute any civil action, suit or other proceeding in any court . . . against [AFSCME] . . . without first exhausting all [internal] remedies, including all available appeals").

In the Complaint, Palladino alleges that he filed a second internal appeal – which remains pending - but does not specify to which appellate body. (See Compl. ¶ 126.) Defendants state that Palladino first appealed Insinga's decision to the Judicial Panel, which was denied, and subsequently appealed the Judicial Panel's denial to the International Convention, which was also denied. (See Defs.' Mem. at 8.) Defendants provide no citation or supporting

documentation for the proposition that Palladino's appeal to the International Convention was denied. (See id.) But even accepting Defendants' statement as true, it is unclear whether Palladino properly exhausted AFSCME's internal appeals process because there is no indication that Palladino appealed the Judicial Panel's decision to the full Judicial Panel before filing an appeal with the International Convention. (See AFSCME Const., art. X, § 17.) Essentially, Palladino may have filed only two of the three available appeals under the AFSCME Constitution.

Despite these factual uncertainties, the Court finds that Palladino has sufficiently exhausted his union remedies because Palladino filed his first internal appeal on February 4, 2024, more than four months before he brought this lawsuit. (See Compl. ¶ 126; Dkt. No. 1.) See Ostrowski v. Local 1-2, Util. Workers Union of Am., 530 F. Supp. 208, 213 (S.D.N.Y. 1980) (excusing plaintiff's failure to exhaust internal union remedies where more than four months had elapsed since plaintiff filed his appeal); Ward v. International All. of Theatrical Stage Emps., IATSE Loc. 480, No. 24 Civ. 946, 2025 WL 918682, at *9 (D.N.M. Mar. 26, 2025) (same). Accordingly, the Court will consider the merits of Palladino's LMRDA claim.

       3.   Merits

As a general matter, Section 101(a)(5) was "not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions," Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964), but rather to "guard[] against abusive and unjust exercise of union authority by prohibiting a union from disciplining a member without first affording him certain procedural safeguards against unwarranted or inaccurate adjudication." Rosario v. Amalgamated Ladies' Garment Cutters Union, 605 F.2d 1228, 1238 (2d Cir. 1979). Congress "believed that only essential standards should be imposed by legislation, and that in establishing those standards, great care should be taken not to undermine union self-government." United Steelworkers v. Sadlowski, 457 U.S. 102, 117 (1982). Accordingly, courts should not intrude upon internal union disciplinary actions except to uphold these essential standards. See International Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 242–46 (1971); Mandaglio v. United Bhd. of Carpenters, 575 F. Supp. 646, 651 n.7 (E.D.N.Y. 1983) (under the LMRDA, courts may not review a union's disciplinary decision de novo).

"[C]ourts faced with challenges arising under Section 101(a)(5) recognize that union disciplinary proceedings are not judicial proceedings, and therefore, the full panoply of procedural safeguards found in such proceedings are not

required." <u>Georgopoulos v. International Bhd. of Teamsters</u>, 942 F. Supp. 883, 895 (S.D.N.Y. 1996). Section 101(a)(5) of the LMRDA "does not require that union disciplinary hearings incorporate the specific protections associated with judicial proceedings, including the right to be represented by counsel and the technical rules of pleading, procedure, and evidence." <u>United States v. International Bhd. of Teamsters</u>, No. 88 Civ. 4486, 2007 WL 2319129, at *4 (S.D.N.Y. Aug. 9, 2007) (citation omitted). Thus, courts reviewing internal union disciplinary actions should intervene "only if there has been a breach of fundamental fairness." <u>United States v. International Bhd. of Teamsters</u>, 22 F. Supp. 2d 135, 143 (S.D.N.Y. 1998) (citation omitted).

Here, Palladino argues that Defendants denied him a full and fair hearing as required by Section 101(a)(5)(C) because (1) his rights under the AFSCME Constitution were violated, (2) his due process rights guaranteed by the LMRDA were violated, and (3) Insinga was a biased trial officer. (<u>See</u> Pl.'s Opp'n at 3-9.) According the appropriate deference to the union, for the reasons explained below, the Court finds that Palladino has failed to state a claim under the LMRDA.

### a. AFSCME Constitution

Whether a plaintiff has sufficiently alleged that an internal union disciplinary proceeding violated Section

101(a)(5)(C) entails a two-step inquiry: (1) whether the proceeding violated the union constitution, and if so, (2) whether the violation deprived the plaintiff of "a fair trial within the meaning of the LMRDA." United States v. International Bhd. of Teamsters, 652 F. Supp. 2d 447, 460 (S.D.N.Y. 2009) (quoting Yager v. Carey, 910 F. Supp. 704, 713 (D.D.C. 1995)). "A violation of a procedural provision of a union's constitution is actionable only if the violation deprived the party of a full and fair hearing under the LMRDA." Nunes v. United Bhd. of Carpenters, No. 20 Civ. 1092, 2021 WL 1172625, at *5 (S.D.N.Y. Mar. 29, 2021) (citation omitted). Thus, "[a]n action may not be brought under the LMRDA merely to enforce a union's internal rules or procedures," unless the union's failure to follow its internal rules "severely handicapped the preparation and presentation of [the plaintiff's] defense, or seriously increased the danger of an erroneous determination." Caloumeno v. McGowan, 668 F. Supp. 322, 326 (S.D.N.Y. 1987).

Palladino argues that Defendants' failure to comply with the AFSCME Constitution violated the LMRDA's guaranteed protections in three respects: (1) Palladino was not provided with specific written charges, (2) Defendants failed to comply with several pretrial procedures prescribed in the AFSCME Constitution, and (3) Palladino was not permitted to

call and cross-examine certain witnesses. The Court addresses these alleged constitutional violation arguments in turn and, where appropriate, also addresses any accompanying due process arguments.

i.  Written Specific Charges

Palladino makes two arguments regarding the specificity requirements of the AFSCME Constitution and the LMRDA. First, Palladino alleges that the Charges failed to meet the standard of detail required by Article X, Section 6 of the AFSCME Constitution. (See Compl. ¶¶ 86, 89-90.) Second, Palladino alleges that the Charges were not sufficiently specific, in violation of the LMRDA, because Palladino could not adequately prepare his defense and was ultimately convicted of an uncharged offense.[6] (See Pl.'s Opp'n at 7-9.)

First, the Court finds that Palladino has abandoned his theory that the Charges violated the specificity requirement in the AFSCME Constitution. Under Article X, Section 6 of the AFSCME Constitution, members must receive written charges that are "specific," detailing "the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific

_____

[6] Palladino argues that the Charges were misleading in violation of the due process guarantees of the LMRDA, not the AFSCME Constitution. (See Pl.'s Opp'n at 7-8.) However, for the sake of clarity and efficiency, the Court analyzes Palladino's arguments regarding the sufficiency of the written charges together.

Section shall be cited, along with the specific act or failure to act which constitutes the alleged violation." (AFSCME Const., art. X, § 6.) Defendants argue that Palladino was provided with written specific charges because the Charges stated the nature and circumstances of the alleged offenses against Palladino in accordance with Article X, Section 6 of the AFSCME Constitution. (See Defs.' Mem. at 12-13.) Palladino, however, does not address Defendants' argument that the Charges complied with the specificity requirement in Article X, Section 6 of the AFSCME Constitution. See Sullivan v. City of New York, No. 14 Civ. 1334, 2015 WL 5025296, at *4 (S.D.N.Y. Aug. 25, 2015) (the court may "properly deem a represented party to have abandoned claims if, in opposing a motion to dismiss multiple claims, it addressed only some of them").

Nor does the Complaint, on its own, sufficiently allege that the Charges violated the specificity requirement of the AFSCME Constitution. See McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."). The Complaint merely states that the Charges do not meet the standard of detail in Article X, Section 6 of the AFSCME Constitution, (see Compl. ¶¶ 86, 89-90), but the

Complaint does not allege any facts in support of this conclusion or explain how these deficiencies were prejudicial to Palladino. Because "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss," Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (citation omitted), Palladino's conclusory allegation that the Charges violated Article X, Section 6 of the AFSCME Constitution is insufficient to withstand a motion to dismiss.[7] See Hell's Kitchen Neighborhood Ass'n v. Bloomberg, No. 05 Civ. 4806, 2007 WL 9818939, at *2 (S.D.N.Y. Mar. 19, 2007).

Second, the Court finds that Palladino was provided with "written specific charges" as required by the LMRDA. See 29 U.S.C. § 411(a)(5)(A). Under the LMRDA, a member must receive charges that are "specific enough to inform the accused member of the offenses allegedly committed." Hardeman, 401 U.S. at 245 (citation omitted); see Gleason v. Chain Service Restaurant, 422 F.2d 342, 343 (2d Cir. 1970) (union disciplinary charges must include "the information needed

---

[7] Even if Palladino had not abandoned his theory that the Charges violated the AFSCME Constitution, Palladino cannot state an LMRDA claim because, as explained below, the Charges complied with the requirements of the LMRDA. See Piacente, 2015 WL 5730095, at *10 ("[E]ven where a union fails to abide by its own procedural rules, there is no LMRDA violation unless the failure also contravenes specific prohibitions in the LMRDA." (citation omitted)).

[for an accused member] to conduct a meaningful investigation and prepare a defense"). Generally, the inclusion of (1) "a statement of the factual basis underlying the charges" and (2) "the nature of the charges" is enough to satisfy the specific written charge requirement. <u>Kent v. New York State Pub. Emps. Fed'n</u>, 612 F. Supp. 3d 50, 67 (N.D.N.Y. 2020).

Although the degree of specificity required in the charging document necessarily depends on the circumstances of the action, <u>see</u> <u>Berg v. Watson</u>, 417 F. Supp. 806, 810 (S.D.N.Y. 1976), "a highly technical statement of the facts" is not required. <u>Johnson v. National Ass'n of Letter Carriers Branch 1100</u>, 182 F.3d 1071, 1074 (9th Cir. 1999); <u>see Magelssen v. Local Union No. 518, Operative Plasterers' & Cement Masons' Int'l Ass'n</u>, 233 F. Supp. 459, 461 (W.D. Mo. 1964) (explaining that Congress rejected a bill that would have required union charges to include "the time, place, specific nature of, and facts comprising the alleged offense, and citation of the rule alleged to be violated"). Ultimately, "to proceed on a claim that the written charges were deficient and violated the LMRDA, the disciplined union 'member must demonstrate that he was misled or otherwise prejudiced in the presentation of his defense.'" <u>Piacente</u>, 2015 WL 5730095, at *12 (quoting <u>Hardeman</u>, 401 U.S. at 245).

Here, the Charges' statement of facts provided Palladino with sufficient information to conduct a meaningful investigation and to prepare a defense. See Gleason, 422 F.2d at 343. As outlined in the Charges' statement of facts, the Draft Audit found that Local 1549 had failed to exercise appropriate financial control over its assets and, as a result, Local 1549 was placed in an administratorship. (See Sept. 2023 Charges at 5.) As relevant to Palladino, the Draft Audit found that Local 1549 had made large severance payouts "to a particular retiring officer without proper approvals and immediately after a payment cap was rescinded." (See id.) The Charges alleged that the issuance of a greater severance package, which depleted union funds, and the rescission of the payment cap policy, were detrimental to the union and its members. (See id. at 5-6.)

The Court finds that the Charges' statement of facts sufficiently included "the nature of the offense, the circumstances surrounding the alleged infraction and, as nearly as may reasonably be ascertained, the time and place of the occurrence." Berg, 417 F. Supp. at 810; United States v. International Bhd. of Teamsters, 19 F.3d 816, 823 (2nd Cir. 1994) (recognizing that union charges do not require the same specificity as a criminal complaint). Given that Palladino was the only retiring officer among the accused

33

parties, the allegations concerning the improper severance payouts upon retirement necessarily implicated Palladino. (See Sept. 2023 Charges at 5-6.) Indeed, Palladino identified the relevant Charges against him in a letter dated November 13, 2023, acknowledging that he was the only retiring officer. (See Ex. M at 4.) See Kent, 612 F. Supp. 3d at 69.

Further, Palladino properly identified that the "payment cap" recission referred to Local 1549's compensatory time policy and that approval of his compensatory time was at issue, as evidenced by his defense preparations and hearing testimony. See Kent, 612 F. Supp. 3d at 69. Ahead of the hearing, Palladino requested the meeting minutes from the Local 1549 Delegate Assembly where a vote was conducted on salary or other financial payments to one or more Local 1549 officers, as Palladino believed that those minutes would reflect approval of his retirement payments. (See Compl. ¶¶ 107, 109; Ex. M at 4.) During the hearing, Palladino entered several exhibits into the record, including the January 2015 Policy, the August 2020 Policy, and the June 2021 Policy. (See Hearing Decision at 20.) Palladino also testified on direct examination that he was properly paid for the forty-three days of compensatory time because the June 2021 Policy did not impose a mandatory limit on the number of compensatory days that could be compensated upon retirement. (See id. at

21-22.) Thus, the Charges' factual statement sufficiently identified "circumstances surrounding the alleged infractions" that allowed Palladino to prepare a defense. See Berg, 417 F. Supp. at 810.

Regarding the nature of the offenses, Palladino maintains that the Charges were fatally deficient because he was convicted of an uncharged offense. (See Compl. ¶ 90; Pl.'s Opp'n at 8-9.) Palladino argues that he was only on notice that his compensatory time payout did not conform with Local 1549's policies regarding compensatory time. (See Pl.'s Opp'n at 8.) Palladino insists that he had no way of knowing that the nature of the alleged conduct actually implicated a violation of the AFSCME Financial Standards Code. (See id.) The Court finds, however, that the Charges contradict Palladino's position.

As a general matter, where "the union's charges make reference to specific written provisions," Title I of the LMRDA "empowers the federal courts to examine those provisions and determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense." Hardeman, 401 U.S. at 245. Upon review of the Charges, the Court finds that they sufficiently apprised Palladino of the nature of the alleged offenses. In addition to the factual statement, the Charges identified relevant

provisions of the AFSCME Financial Standards Code, putting Palladino on notice that the compensatory time payout he received allegedly violated the cited union rules concerning disbursement of union funds.[8] (See Sept. 2023 Charges at 5-6.)

Specifically, the Charges cited three provisions of the AFSCME Financial Standards Code that are relevant to Palladino. First, Article V of the AFSCME Financial Standards Code, which states that union money can be spent only with proper authorization, that all union officers have a duty to monitor all authorizations to ensure that union funds are spent for only legitimate union purposes, and that officers have a fiduciary duty to ensure that the union's assets are managed prudently. (See id. at 5-6; AFSCME Fin. Standards Code, art. V.)

Second, Appendix F of the AFSCME Financial Standards Code, which instructs AFSCME affiliates to establish clearly defined written policies and procedures. (See AFSCME Fin. Standards Code, App. F.) Under a proper compensatory time policy, disbursements must be supported by adequate records showing purpose, approval, calculation method, and

---

[8] Although the listed provisions of the AFSCME Financial Standards Code are not specific to each accused member, (see Sept. 2023 Charges at 5-6), such does not amount to an LMRDA violation. See Kent, 612 F. Supp. 3d at 68 (charging letter that did not separate out charges to specific individuals satisfied the LMRDA's written specific charges requirement).

documentation that the individual actually incurred the requested time. (See Sept. 2023 Charges at 5-6; AFSCME Fin. Standards Code, App. F.) Further, authorized compensatory time payments must be documented in meeting minutes of the membership or the Executive Board. (See AFSCME Fin. Standards Code, App. F.)

Third, Article VIII, Section 4 of the AFSCME Financial Standards Code, which requires that all meeting minutes be approved by the appropriate body, meaning, for example, that the Executive Board approves Executive Board minutes or the membership approves membership meeting minutes. (See Sept. 2023 Charges at 5-6; AFSCME Fin. Standards Code, art. VIII, § 4.)

Based on these cited provisions in the Charges, the Court finds that Palladino was on notice that his alleged conduct implicated violations of the AFSCME Financial Standards Code.

Palladino also argues that the Charges were misleading and prejudicial because they did not specify how he or Local 1549 violated the AFSCME Financial Standards Code. (See Pl.'s Opp'n at 8-9.) However, the LMRDA does not require disciplinary charges to explain how the alleged facts amount to a violation of the cited union rules. See Piacente, 2015 WL 5730095, at *14; Johnson, 182 F.3d at 1074 n.5 ("[A] charge need not apply the underlying facts to the particular

constitutional provision or by-law alleged to have been violated.").

Further, Palladino's argument that he was disciplined for uncharged conduct is unpersuasive. Palladino was found guilty of violating Article V of the AFSCME Financial Standards Code, which was a provision of the AFSCME Financial Standards Code that was cited in the Charges. (See Sept. 2023 Charges at 5-6.) Compare Kent, 612 F. Supp. 3d at 69 (rejecting plaintiffs' argument that they were disciplined for uncharged conduct because "[t]he Hearing Panel's decision expressly concluded that Plaintiffs violated certain sections of the [Union] Constitution and the [Union] Code of Ethics, all of which were specifically set forth in Defendant['s] grievance"), with Murdock v. American Mar. Officers Union Nat'l Exec. Bd., 603 F. Supp. 3d 1325, 1332 (S.D. Fla. 2022) (plaintiff was not provided with written specific charges because he was disciplined for a violation of a union constitutional provision that was not mentioned in the charging document).

As explained in the Hearing Decision, Insinga found that Palladino's compensatory time payment violated Article V of the AFSCME Financial Standards Code on numerous grounds. Insinga concluded that there was no evidence that showed that Local 1549's compensatory time policy changes in 2015, 2020,

and 2021 were properly authorized by Local 1549's governing bodies. (See Hearing Decision at 32.) Further, there was no evidence that Palladino's compensatory time payment was discussed or approved in the Local 1549 meeting minutes or the Executive Board meeting minutes. (See id. at 30-31.) Insinga also found that Palladino, in taking the compensatory time payout, breached his fiduciary duty as an officer of Local 1549 in violation of Article V. (See id. at 33.) The June 2021 Policy, while not proper policy, requested that staff with over twenty days of compensatory time use those days within five months. (See id.) Even though the June 2021 Policy did not mandate use of the compensatory days, Insinga concluded that Palladino's balance of forty-three days upon retirement reflected Palladino's disregard of the June 2021 Policy for his own benefit, to the detriment of Local 1549. (See id. at 31, 33.) In short, a comparison of the Charges and the Hearing Decision supports a reasonable finding that Palladino was found guilty of charged offenses.

Ultimately, Palladino has not identified any deficiencies in the Charges that amount to a violation of the LMRDA.

### ii. Other Pretrial Procedures

Palladino contends that Defendants, in violation of the AFSCME Constitution, disregarded several pretrial procedures.

First, Palladino argues that he did not receive the Charges
fifteen days after the Charges were filed, in violation of
Article X, Sections 10 and 12A of the AFSCME Constitution.
(See Compl. ¶¶ 93-94.) Second, Palladino maintains that this
delayed service of the Charges foreclosed his ability to
object to Insinga as the trial officer, in violation of
Article XI, Section 8 of the AFSCME Constitution. (See id. ¶¶
94-97.) Third, Palladino argues that Defendants failed to
produce the internal union documents that he requested, in
violation of Article X, Section 12(H) of the AFSCME
Constitution. (See id. ¶¶ 103, 107-09.) The Court addresses
these procedural arguments in turn.

First, Palladino argues that he did not receive the
Charges until October 10, 2023, more than fifteen days after
the Charging Parties filed the Charges with Insinga on
September 18, 2023.[9] (See id. ¶ 94; Ex. M at 3.) According to
Palladino, his delayed receipt of the Charges violated
Article X, Sections 10 and 12A of the AFSCME Constitution
because he was entitled to receive the Charges fifteen days
after they were filed. (See Compl. ¶¶ 93-94.) Palladino

_____

[9] Although Defendants insist that Palladino received the Charges the same
day that they were served on September 18, 2023, (see Defs.' Mem. at 13),
at the motion to dismiss stage, the Court accepts Palladino's allegation
as true that he received the Charges on October 10, 2023. See Goldstein,
516 F.3d at 56.

misconstrues these two constitutional provisions, which distinguish between service and receipt of the charges.

At the outset, the Court notes that per the AFSCME Constitution, the Charging Parties were required to file the Charges with Insinga in her a capacity as the chairperson of the Judicial Panel. (See AFSCME Const., art. X, § 9; Sept. 2023 Charges at 3.) In turn, Insinga was responsible for serving the Charges on the accused parties in accordance with Sections 10 and 12(A) of Article X. (See AFSCME Const., art. X, § 9.) With this context, the Court now addresses the timeliness of the Charges.

Article X, Section 12(A) of the AFSCME Constitution guarantees that the charges will be served on an accused member within fifteen days of the date that the charges were filed, either through personal service, email, or certified mail, and that an accused member will receive the charges at least thirty days before trial. (See AFSCME Const., art. X, § 12(A).) Similarly, Article X, Section 10 states that the person with whom the charges were filed must serve the charges on an accused member by email or certified mail within fifteen days of receiving the charges from the charging parties and must include a copy of Article X of the AFSCME Constitution and an explanation of trial procedures. (See id., art. X, § 10.)

41

Sections 10 and 12(A) required Insinga to serve the Charges on the accused parties within fifteen days of receiving the Charges from the Charging Parties. The Charging Parties filed the Charges with Insinga on September 18, 2023. (See Compl. ¶ 78.) Insinga's letter accompanying the Charges indicates that Insinga served the Charges on the accused parties by email and/or mail on September 18, 2023, the same day the Charges were filed.[10] (See Sept. 2023 Charges at 3.) Thus, Insinga served the Charges within the fifteen-day window as defined in Sections 10 and 12(A) of Article X.

Further, pursuant to Article X, Section 12(A), an accused party must receive the charges at least thirty days before the disciplinary proceeding. (See AFSCME Const., art. X, § 12(A).) Here, Palladino received the Charges on October 10, 2023, forty-one days before the disciplinary hearing on November 20, 2023, in compliance with Section 12(A). (See Compl. ¶¶ 94, 102; Ex. M at 3.) The Court rejects Palladino's argument that he was entitled to *receive* the Charges within

---

[10] Although unaddressed in Palladino's Opposition, the Court is mindful that the Complaint suggests that Insinga delayed service of the Charges until October 10, 2023, and that Palladino received the Charges the same day. (See Compl. ¶ 94; Ex. M at 3.) Although the Court must accept the facts alleged in the Complaint as true, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." Press v. Primavera, 685 F. Supp. 3d 216, 223 (S.D.N.Y. 2023) (citations omitted). Given that Insinga's letter is dated September 18, 2023, the Court concludes that Insinga served the Charges on September 18, 2023, and that Palladino did not receive the Charges until October 10, 2023.

fifteen days of September 18, 2023, the date that Charges were filed and served. The AFSCME Constitution includes no such requirement. As explained above, the fifteen-day service requirement in Sections 10 and 12(A) applies to Insinga, who was responsible for serving the Charges on the accused parties. Given that Insinga's service of the Charges was timely and Palladino received the Charges more than thirty days before the disciplinary hearing, there was no violation of the AFSCME Constitution. (See AFSCME Const., art. X, §§ 10, 12(A).) See Piacente, 2015 WL 5730095, at *10.

To the extent Palladino argues that his delayed receipt of the Charges also violated due process, the Court disagrees. The LMRDA affords union members a reasonable time to prepare a defense. See 29 U.S.C. § 411(a)(5)(B). Although Palladino did not receive the Charges until October 10, 2023, Palladino was still afforded forty-one days to prepare his defense before the disciplinary hearing on November 20, 2023, which the Court finds constituted a reasonable amount of time under the LMRDA. See, e.g., Kirrane v. Transport Workers Union of Am., 781 F. Supp. 1044, 1049 (S.D.N.Y. 1992) (twenty days' notice of the charges was sufficient where the notice period satisfied the union's constitution); Wellman v. International Union of Operating Eng'rs, 812 F.2d 1204, 1206 (9th Cir. 1987)

(twenty-eight days' notice of the charges satisfied the LMRDA's reasonable-time requirement).

Second, Palladino argues that as a result of his delayed receipt of the Charges, Defendants disregarded his request to strike Insinga as the trial officer of the disciplinary hearing in violation of Article XI, Section 8 of the AFSCME Constitution. (See Compl. ¶¶ 95-99.) Section 8 of Article XI requires the chairperson of the AFSCME Judicial Panel – here, Insinga - to send the parties a list of members of the Judicial Panel who are eligible to serve as the trial officer. (See AFSCME Const., art. XI, § 8.) Within fifteen days, the parties may strike no more than two names from the list. (See id.) From the remaining names, the chairperson appoints one eligible member to serve as the trial officer. (See id.)

In her letter to the parties dated September 18, 2023, Insinga served the Charges and informed the parties that, in accordance with the AFSCME Constitution, a member of the AFSCME Judicial Panel would be appointed to preside over the disciplinary hearing. (See Sept. 2023 Charges at 3.) The letter included a list of potential trial officers and noted that each side had the right strike up to two names from the list, but that each side should internally confer before exercising this right. (See id.) The letter stated that each side's strike list was due by October 3, 2023. (See id.) On

or about October 5, 2023, Insinga appointed herself as the trial officer of the disciplinary hearing. (See Compl. ¶ 97.) On October 24, 2023, Palladino sent a letter to the Judicial Panel, objecting to any member of the Judicial Panel who had participated in the Administratorship Hearing, including Insinga, from serving as the trial officer. (See Ex. L at 3.)

Even taking all inferences in favor of Palladino, it is unclear whether there was a violation of Article XI, Section 8. Insinga's instructions on September 18, 2023, included the required information and there is no indication that a party struck Insinga from the list of potential trial officers within the fifteen-day period, which closed on October 3, 2023. Although Palladino failed to file his objection by October 3, 2023, the Court is mindful that Palladino filed his objection within fifteen days of receiving the Charges. (See id.) Because Article XI, Section 8 is silent on whether the fifteen-day clock is triggered by the chairperson's service or a party's receipt of the strike instructions, the Court considers Palladino's LMRDA argument.

Palladino argues that his inability to strike Insinga as the trial officer was prejudicial because Insinga was biased against him. (See Compl. ¶¶ 96-100.) However, as explained extensively below, Palladino has failed to allege sufficiently that Insinga was biased. Thus, Defendants'

45

potential failure to follow the procedural requirements of Article XI, Section 8 of the AFSCME Constitution does not amount to a violation of the LMRDA. <u>See</u> <u>Piacente</u>, 2015 WL 5730095, at *10.

Third, Palladino argues that Defendants ignored his request to compel various documents, in violation of Article X, Section 12(H) of the AFSCME Constitution. (<u>See</u> Compl. ¶ 108.) Article X, Section 12(H) guarantees an accused member's "right to compel the production of union records pertinent to the case." (AFSCME Const., art. X, § 12(H).) Palladino insists that Defendants' failure to provide the requested meeting minutes was prejudicial because the meeting minutes would have included the budgets that the Board of Delegates voted on and approved. According to Palladino, those budgets would have included approval of the severance payment made to Palladino upon his retirement. (<u>See</u> Compl. ¶ 109; Pl.'s Opp'n at 10-11.)

In response, Defendants argue that Palladino did not receive the requested documents because he incorrectly submitted his request to AFSCME and Insinga, not Local 1549. (<u>See</u> Defs.' Mem. at 13.) However, Defendants do not provide any support for the proposition that Palladino was required to submit his evidentiary requests to Local 1549, not Defendants, and the AFSCME Constitution excerpts do not

include any procedural requirements concerning document production requests. And given that AFSCME had placed Local 1549 in an administratorship, the Court is unpersuaded that Palladino's production requests were misdirected to Defendants. Taking the allegations in the Complaint as true, Palladino has established that Defendants failed to produce the requested records as required by Article X, Section 12(H) of the AFSCME Constitution.

Although Palladino has alleged a violation of the AFSCME Constitution in that Defendants failed to compel the requested documents, he cannot establish that a "breach of fundamental fairness" occurred during his disciplinary proceeding. See International Bhd. of Teamsters, 652 F. Supp. 2d at 461. There is no indication that the LMRDA requires unions to provide accused members with documents that are material to the allegations against them. See Georgopoulos, 942 F. Supp. at 897 ("[T]his Court's own research reveals no Second Circuit case law that supports plaintiffs' claim that '[a] union must provide accused members with documents which are material to the proof of the allegations against them.'"); NLRB v. Valley Mold Co., 530 F.2d 693, 695 (6th Cir. 1976) ("[P]arties to judicial or quasi-judicial proceedings are not entitled to discovery as a matter of constitutional right.").

47

Moreover, Palladino's argument that his severance was properly authorized as part of the Local 1549 budget – and that such approval would have been reflected in the meeting minutes - is unpersuasive. Article V of the AFSCME Financial Standards Code states that "[b]y itself, a budget does not authorize any particular expenditure" and that "[n]o payment should be made or costs incurred until the proper approvals for the expenditure have been made." (See AFSCME Fin. Standards Code, art. V, § 4(D).) As Insinga found, Local 1549's policies regarding compensatory time payouts were insufficient and there was no evidence that Palladino's severance payment was independently approved by Local 1549's governing bodies. (See Hearing Decision at 32.) Further, Palladino concedes that Local 1549's governing bodies never voted to approve a retiring officer's severance payment. (See Compl. ¶ 111.) Thus, Palladino could not have used the meeting minutes reflecting approval of Local 1549's budget as a defense to show that his severance was properly authorized. Accordingly, Defendants' failure to produce the requested meeting minutes did not "severely handicap[] the preparation and presentation of [Palladino's] defense, or seriously increase[] the danger of an erroneous determination," and the LMRDA provides no relief. Caloumeno, 668 F. Supp. at 326.

Ultimately, Palladino has failed to allege that Defendants' deviations from the AFSCME Constitution's pretrial procedures denied him a full and fair hearing under the LMRDA.

### iii.  Witnesses

Palladino argues that he was improperly denied the opportunity to cross-examine the authors of the Draft Audit because they were not compelled to testify at the disciplinary hearing. (See Compl. ¶¶ 104-06, 114-15; Pl.'s Opp'n at 4-5.) Palladino also argues that he was improperly denied the opportunity to call or cross-examine certain Charging Parties as witnesses. (See Pl.'s Opp'n at 4-5, 10.) Palladino maintains that his inability to call or cross-examine these individuals violated both the AFSCME Constitution and the basic due process principles guaranteed by the LMRDA. (See id.)

Article X, Section 12(G) of the AFSCME Constitution guarantees "[t]he right to present witnesses in the accused person's behalf." (See AFSCME Const., art. X, § 12(G).) Considering that Section 12(H) guarantees the right to "compel" union documents, the Court finds that Section 12(G) does not similarly confer the right to compel an individual to testify. See cf. Sosa v. Alvarez-Machain, 542 U.S. 692, 712 n.9 (2004) ("[W]hen the legislature uses certain language

in one part of the statute and different language in another, the court assumes different meanings were intended." (citation omitted)); <u>United States v. International Bhd. of Teamsters</u>, 247 F.3d 370, 385-86 (2d Cir. 2001) (noting that union constitutions generally do not grant members power to subpoena witnesses in the context of disciplinary hearings).

And even if the AFSCME Constitution allowed a union member to compel witness testimony, the LMRDA only "guarantees union members an opportunity . . . to call to their defense anyone who would willingly testify." <u>Brittain v. American Fed'n of Gov't Emps.</u>, No. 20 Civ. 92, 2021 WL 2315005, at *10 (M.D. Fla. June 7, 2021). "Constitutional due process does not require that a union member has the power to subpoena witnesses to appear at a union disciplinary hearing." <u>United States v. International Bhd. of Teamsters</u>, 870 F. Supp. 557, 561 (S.D.N.Y. 1994). Thus, Palladino was not entitled to compel testimony from the authors of the Draft Audit. <u>See</u> <u>Keenan v. International Ass'n of Machinists & Aerospace Workers</u>, 937 F. Supp. 2d 93, 117 (D. Me. 2013) ("[Plaintiff] was not denied his right to a full and fair hearing by his inability to force individuals to appear at the hearing and testify on his behalf."); <u>Brittain</u>, 2021 WL 2315005, at *10 ("Trial committees are not required to compel the appearance of individuals who do not wish to testify.").

Nor was Palladino entitled to cross-examine the authors of the Draft Audit because those individuals were not called as witnesses by any other party during the disciplinary proceeding. See Brittain, 2021 WL 2315005, at *11.

Palladino also takes issue with Insinga's failure to compel testimony from Charging Parties Lackhan and Carter. (See Compl. ¶¶ 110-12.) Article X, Section 12 of the AFSCME Constitution guarantees an accused member's "right to confront the accuser," (AFSCME Const., art. X, § 12(E)), and the "right to cross-examine the accuser." (Id., art. X, § 12(F).) Palladino's inability to call Carter did not violate the AFSCME Constitution because Carter was dismissed as a Charging Party for his failure to attend the entire disciplinary proceeding, as required by the AFSCME Constitution. (See Hearing Decision at 3-4.) Given that Carter was dismissed as an accuser, Palladino did not have the right to confront or cross-examine Carter.

Although Lackhan declined to testify and Insinga subsequently did not compel him to do so, (see Compl. ¶ 112), such does not amount to a LMRDA violation. The "LMRDA does not provide union members a right to call an individual as a witness simply because the individual filed the charges at issue." Brittain, 2021 WL 2315005, at *11; Yager, 910 F. Supp. at 717 ("[P]laintiffs do not necessarily have a right to

question the person who filed the charges.") Palladino acknowledges that he was able to cross-examine Charging Party Wang, who introduced the Draft Audit into evidence. (See Pl.'s Opp'n at 10.) Thus, "[Palladino] was provided due process: he confronted every witness presented against him and could call to his defense anyone who would willingly testify." Keenan, 937 F. Supp. 2d at 117.

In sum, Palladino's inability to compel witness testimony from the authors of the Draft Audit and certain Charging Parties did not violate his rights under the AFSCME Constitution or the LMRDA.

### b. Due Process

In addition to the alleged violations of the AFSCME Constitution, Palladino argues that his due process rights under the LMRDA were violated. The LMRDA incorporates "traditional concepts of due process," such as "adequate notice and a reasonable opportunity to defend, including the right to confront an accuser, to present evidence and to cross-examine witnesses." Feltington v. Moving Pictures Mach. Operators' Union, Loc. 306, No. 77 Civ. 4417, 1977 WL 1807, at *2 (S.D.N.Y. Dec. 5, 1977). Although a "conviction by a union on charges unsupported by any evidence constitutes a violation of the due process guarantees of [Section 101(a)(5)]," there is "[n]o requirement . . . that a

conviction be supported by substantial evidence." <u>Daniels v.
National All. of Postal & Fed. Emps.</u>, No. 83 Civ. 1444, 1985
WL 6408, at *4 (D.D.C. Oct. 4, 1985) (citation omitted).
Rather, "the burden of proof is low" and "the charging party
must provide only some evidence at the disciplinary hearing
to support the charges." <u>Piacente</u>, 2015 WL 5730095, at *10
(citation omitted).

Here, Palladino argues that his due process rights were
violated because (1) the Charges were untimely, as they were
filed a year after the Draft Audit was available at the
Administratorship Hearing, (2) Insinga improperly relied on
the Draft Audit, which was unreliable hearsay, and (3)
Palladino was unfairly targeted and disciplined for receiving
his compensatory payout. As further explained below,
Palladino has failed to allege any due process violations
under the LMRDA.

### i.  Charges Were Untimely

Palladino alleges that the Charges were untimely because
the Charging Parties delayed filing the Charges against
Palladino for nearly a year even though the Charging Parties
knew or should have known that Palladino had received an
allegedly improper compensatory time payout no later than
October 19, 2022, when the Draft Audit was circulated at the
Administratorship Hearing. (<u>See</u> Compl. ¶¶ 91-92.) As

Palladino acknowledges, the AFSCME Constitution does not impose a time limit for filing disciplinary charges. (See id. ¶ 92.) Nonetheless, Palladino insists – without any support - that a six-month limitation period is reasonable. (See id.) The Complaint is devoid of any suggestion that the delayed filing of the Charges deprived Palladino of due process under the LMRDA. See cf. Green v. Brigham, No. 03 Civ. 5190, 2005 WL 280327, at *5 (E.D.N.Y. Feb. 3, 2005) (no LMRDA violation even though the charges were untimely under the union constitution). Thus, Palladino's conclusory allegation that the Charges were brought six months too late is insufficient to withstand a motion to dismiss. See Hell's Kitchen Neighborhood Ass'n, 2007 WL 9818939, at *2.

### ii.  Hearsay Evidence

Palladino argues that Insinga's exclusive reliance on the Draft Audit deprived him of due process because the Draft Audit was unreliable hearsay. (See Pl.'s Opp'n at 5-6.) According to Palladino, the Draft Audit was unreliable because: (1) Palladino was not given the opportunity to confront and cross-examine its authors, and (2) the Draft Audit's conclusions were based on misinterpretations of Local 1549's compensatory time policies in 2015, 2020, and 2021. (See id.) Defendants argue that Insinga did not exclusively rely on the Draft Audit in rendering the Hearing Decision.

(See Defs.' Reply at 6.) Defendants maintain that Insinga found Palladino guilty based on Wang's testimony regarding the Draft Audit and because Palladino failed to proffer evidence showing that his compensatory time payout was authorized by the Local 1549 general membership or Executive Board, or that his compensatory time was properly documented. (See id.)

First, as explained above, Palladino could not compel the authors of the Draft Audit to testify on his behalf. See International Bhd. of Teamsters, 870 F. Supp. at 561. Palladino also did not have the right to cross-examine the authors of the Draft Audit because these individuals were not witnesses in the disciplinary hearing. See Brittain, 2021 WL 2315005, at *11. (See AFSCME Const., art. X, § 12(F) (guarantees the "[r]ight to cross-examine . . . any witnesses").)

Second, Insinga appropriately considered the Draft Audit, which was rendered reliable based on the witness testimony and evidence presented during the disciplinary proceeding. "[I]t is well established that reliable hearsay is admissible in union disciplinary proceedings." United States v. International Bhd. of Teamsters, No. 88 Civ. 4486, 2014 WL 11460503, at *4 (S.D.N.Y. Jan. 7, 2014); United States v. Boggia, 167 F.3d 113, 118 (2d Cir. 1999) (hearsay is

admissible in union proceedings "so long as it is accompanied by sufficient indicia of reliability"). Although "[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence, reliable hearsay may constitute substantial evidence to support an administrative decision." United States v. International Bhd. of Teamsters, 998 F.2d 120, 124 (2d Cir. 1993) (citations omitted). Moreover, "hearsay statements may gain reliability by corroborating one another or by including specific details." International Bhd. of Teamsters, 19 F.3d at 823; United States v. International Bhd. of Teamsters, 964 F.2d 1308, 1312-13 (2d Cir. 1992) (hearsay statements that "paint[ed] a consistent picture of certain details" were reliable and adequately supported the panel's conclusion).

Here, the witness testimony and supporting documentation introduced during the disciplinary hearing corroborated the findings in the Draft Audit. Charging Party Wang introduced the Draft Audit and testified to its factual findings and conclusions, including those implicating Palladino. (See Hearing Decision at 6-8.) Palladino was given the opportunity to cross-examine Wang on the Draft Audit, (see Compl. ¶ 117; Pl.'s Opp'n at 10), and beyond the cross-examination of Wang, Palladino testified and submitted evidence on his own behalf. (See Hearing Decision at 20-22.) Based on Wang's testimony

and the supporting documentary evidence, Insinga found that
the Draft Audit was compelling evidence that Palladino's
severance package was not properly authorized. (See id. at
32.) Further, Insinga found that Palladino's testimony and
proffered evidence did not rebut the Draft Audit's findings
that his compensatory time was not properly documented or
authorized by the relevant union bodies. (See id.) Although
Palladino insists that the Draft Audit is unreliable because
it mistakenly concluded that the June 2021 Policy limited an
officer's payable compensatory time to twenty hours, not
twenty days, Insinga acknowledged this error and relied on
the twenty-day parameter in the Hearing Decision. (See id. at
31-32.)

Given that Insinga's conclusions were supported by "some
evidence," Palladino was not denied due process under the
LMRDA. See Kent, 612 F. Supp. 3d at 72. That Palladino
vehemently disagrees with Insinga's conclusions is
insufficient to render the Draft Audit unreliable.
Palladino's position "essentially amounts to a request for
this Court to reweigh the evidence before [Insinga] or to
substitute its own judgment for that of [Insinga], something
that is beyond the scope of the Court's review." See id. Thus,
the Court finds that Palladino's conclusory allegation that

the Draft Audit was unreliable hearsay fails to state a due process violation under the LMRDA.

### iii.  Unfair Punishment

Palladino argues that he was unfairly punished for Local 1549's failures to obtain proper approvals for his compensatory time payout because other Local 1549 officers, the Local 1549 Business Manager, and other similarly situated retired officers were not disciplined. (See Pl.'s Opp'n at 6-7.) However, Palladino fails to explain how these perceived slights are actionable under the LMRDA.

First, Palladino argues that his due process rights were violated because, prior to Palladino's retirement, several retiring officers received similarly unauthorized compensatory payouts but were not expelled from the union or required to return those funds. (See id. at 7.) The Court is unpersuaded that due process under the LMRDA requires Palladino's charges to be replicated against other retired officers. "[A] union's reasonable interpretation of the scope of offenses for which it may discipline its members is entitled to deference." Piacente, 2015 WL 5730095, at *10 (citation omitted). Thus, the Court is not obligated to interpret union rules "in order to determine whether particular conduct falls within or without their scope," or "to scrutinize the union regulations in order to determine

whether particular conduct may be punished at all." <u>Hardeman</u>, 401 U.S. at 244-45.

Second, Palladino maintains that it is unfair that the Business Manager and the other Local 1549 officers were not punished for their involvement in issuing Palladino's severance package. (<u>See</u> Pl.'s Opp'n at 6-7.) Palladino argues that he was selectively prosecuted and punished even though the Business Manager calculated and approved his compensatory time distribution and other Local 1549 officers were also involved in the approval of his compensatory payout. (<u>See</u> <u>id.</u> at 7.) Essentially, Palladino believes that since he was disciplined for receiving his compensatory time payout, others involved in the issuance of his payout should be disciplined as well.

Palladino's position is meritless. The Court reiterates that unions have discretion to determine what conduct may be subject to discipline. <u>See</u> <u>Hardeman</u>, 401 U.S. at 244-45. Moreover, there is no indication that the Charging Parties named the Business Manager as an accused party, so it naturally follows that the Business Manager was not subjected to discipline as a result of the hearing. Further, the Local 1549 Constitution states that the Business Manager is hired as a third-party accountant and is not a member of the Executive Board, so it is unclear whether the Business Manager

could even be subjected to an intra-union disciplinary action as a non-member. (See Loc. 1549 Const., art. XIII, § 4.)

Palladino also misrepresents that other union officers were not disciplined in relation to Palladino's severance payment. Insinga explicitly found that, "[a]s officers in January 2022 when the severance package was given to Brother Palladino, Brother Rodriguez, Sister Roper, Brother Cooper, Sister Myers, and Sister Johnson are found guilty of violating Article V" of the AFSCME Financial Standards Code. (Hearing Decision at 33.) However, Brother McLeod was found not guilty because there was no evidence that he was an officer in January 2022 when Palladino was issued his severance package. (See id.) Of the officers found guilty, Cooper, Myers, and Johnson were suspended from the right to hold any elected position for four years and were issued a formal reprimand and warning. (See id. at 39.) Rodriguez was expelled from membership and directed to make restitution for a separate offense and Roper was expelled from membership. (See id. at 40.)

Thus, there is no indication that Palladino's due process rights were infringed on the basis that the Business Manager and other retirees were not subjected to a disciplinary action or on the basis that other Local 1549 officers were not (sufficiently) punished for their

involvement in approving and disbursing Palladino's severance.

### c. Bias of Trial Officer

Finally, Palladino argues that Insinga was a biased trial officer. "A union member subject to internal disciplinary proceedings is entitled to an impartial trial body which arrives at its decision on the basis of evidence that the accused has an opportunity to rebut." Piacente, 2015 WL 5730095, at *10 (citation omitted). To allege bias of a trial body under the LMRDA, a plaintiff "must make specific factual allegations of bias that show that the panelists were incapable of hearing plaintiffs' case impartially." International Bhd. of Teamsters, 2007 WL 2319129, at *4 (citation omitted). A court may find a union hearing officer biased "only upon a demonstration that [the hearing officer] has been substantially actuated by improper motives." Id. (citation omitted).

At the outset, the Court rejects Palladino's argument that his bias claim should be subjected to a more lenient standard of review at the motion to dismiss stage. (See Pl.'s Opp'n at 1-2.) In support of this position, Palladino cites several cases brought under 42 U.S.C. § 1983 ("Section 1983"), (see id.), which state that the Rule 12(b)(6) standard "applies with particular force where the plaintiff alleges

civil rights violations." See, e.g., Leather v. Eyck, 180
F.3d 420, 423 (2d Cir. 1999) (quoting Chance v. Armstrong,
143 F.3d 698, 701 (2d Cir. 1998)). Palladino's reliance on
these cases is misplaced because this lawsuit alleges
violations of the LMRDA, not Section 1983 or other civil
rights statutes. Accordingly, the Court applies the same Rule
12(b)(6) standard used to evaluate Palladino's other merits
arguments to his bias claim.

Turning to the merits, Palladino contends that Insinga's
prior finding that the Draft Audit was credible evidence in
approving the administratorship of Local 1549 resulted in
bias against him because Insinga had already "decided the
crux of the case against [him] was credible." (Pl.'s Opp'n at
6-7.) Palladino's position is unpersuasive. Although Insinga
presided over the Administratorship Hearing, Palladino has
not alleged any facts that Insinga prejudged his guilt or was
incapable of evaluating his case impartially. See Falcone v.
Dantinne, 420 F.2d 1157, 1162-63 (3d Cir. 1969); Kent, 612 F.
Supp. 3d at 75. For example, in Kent, plaintiffs failed to
show that the hearing panel prejudged their guilt even though
the hearing panel had previously reinstated the charges
against plaintiffs, finding that the charges "merited further
investigation." 612 F. Supp. 3d at 75. The district court
reasoned that the hearing panel's prior decision "d[id] not

by itself reasonably establish bias or prejudgment" and
"there [was] no indication that [the hearing panel] made any
finding as to the merits of the charges against Plaintiffs"
in its prior decision. Id.

Similarly, in approving the administratorship, Insinga
noted that the Draft Audit found that Local 1549 "made large
payouts to a retiring officer without proper approvals and
immediately after a payment cap policy was rescinded, raising
concerns." (See Administratorship Decision at 12.) Like the
Draft Audit, Insinga did not address whether Palladino had
violated the AFSCME Financial Standards Code, (see Compl. ¶
73), and did not address any other issues concerning the
merits of Palladino's case. Nor does Palladino allege that
Insinga made any other statements prior to the disciplinary
hearing that suggested that she had prejudged his guilt. See
Falcone, 420 F.2d at 1161-63 (finding prejudgment where "at
least one member of the Trial Body in this case, by his own
admission, had made up his mind about [plaintiff's] 'guilt'
at or prior to the informal proceeding"). Thus, Palladino's
allegations of bias fall short of the factual specificity
required to state a LMRDA violation.

* * *

For the reasons explained above, although Palladino has
standing under the LMRDA and has sufficiently exhausted his

intra-union remedies, he has failed to state a claim under Section 101(a)(5)(C) of the LMRDA. Accordingly, Palladino's LMRDA claim (Count I) is **DISMISSED** without prejudice.

  B. LMRA

  Palladino argues that Defendants' violations of the AFSCME Constitution are actionable breaches of contract under Section 301 of the LMRA. (See Pl.'s Opp'n at 9-11; Compl. ¶¶ 131-33.) Defendants argue that Palladino's LMRA claim fails on the merits. (See Defs.' Mem. at 16-17; Defs.' Reply at 8-9.) The Court does not reach the merits, however, because the Court has independently determined that it does not have subject matter jurisdiction over the LMRA claim. See Fed. R. Civ. P. 12(h)(3); Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.")

  "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Shulman v. Chaitman LLP, 392 F. Supp. 3d 340, 350 (S.D.N.Y. 2019) (quoting Morrison v. National

Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)). As the plaintiff, Palladino "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." Morrison, 547 F.3d at 170 (citation omitted). Even though "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . jurisdiction must be shown affirmatively" and cannot be established by drawing inferences in plaintiff's favor. Id. (citations omitted).

As a general matter, Section 301 of the LMRA allows an individual union member to sue his union and its officers for alleged violations of the national union's constitution. See Wooddell v. International Bhd. of Elec. Workers, Loc. 71, 502 U.S. 93, 99-102 (1991); Shea v. McCarthy, 953 F.2d 29, 31 (2d Cir. 1992). However, federal courts do not have jurisdiction to address all violations of a union constitution under the LMRA. See Hudson v. American Fed'n of Gov't Emps., 308 F. Supp. 3d 121, 130-31 (D.D.C. 2018). Section 301 of the LMRA specifically confers federal jurisdiction over "[s]uits for violation of contracts between . . . labor organizations." 29 U.S.C. § 185(a). Thus, this Court has subject matter jurisdiction over Palladino's LMRA claim only if (1) the AFSCME Constitution is a contract, and (2) AFSCME and Local 1549 each qualify as a "labor organization" within the scope

of the LMRA. For the reasons explained below, although the AFSCME Constitution is a contract within the scope of the LMRA, Palladino has failed to show that Local 1549 is a labor organization under the LMRA.

It is well established that a union constitution between a parent union and its local affiliates is a contract under Section 301. See Panczykowski v. Laborers' Int'l Union of N. Am., 2 F. App'x 157, 160 (2d Cir. 2001) ("Suits based upon the terms of union constitutions fall within the sweep of [Section] 301."); United Ass'n of Journeymen v. Local 334, 452 U.S. 615, 624 (1981) (concluding that union constitutions, which are "documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals," are contracts within the scope of the LMRA). Based on the allegations in the Complaint, the Court concludes that the AFSCME Constitution is a contract between AFSCME and its affiliated locals, including Local 1549. (See Compl. ¶¶ 5, 35-36.)

However, the existence of a union constitution as the underlying contract does not end the jurisdictional inquiry. Under Section 301, the contract must be between "labor organizations." 29 U.S.C. § 185(a); see Wooddell, 502 U.S. at 98 n.3. Thus, both AFSCME and Local 1549 must qualify as a "labor organization" for this Court to have jurisdiction over

Palladino's LMRA claim. See United Ass'n of Journeymen, 452 U.S. at 622 (exercising jurisdiction over the LMRA claim because the union constitution was a contract, and both the parent union and local affiliate were labor organizations).

The LMRA incorporates the terms "labor organization" and "employer" as defined in the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152. See 29 U.S.C. § 142(3). The NLRA defines a "labor organization" as an entity "in which employees participate and which exists for the purpose, in whole or in part, of dealing with *employers*" regarding employment matters. 29 U.S.C. § 152(5) (emphasis added). In turn, the NLRA provides that an "employer" "shall not include . . . any State or political subdivision thereof." 29 U.S.C. § 152(2). Accordingly, courts in this Circuit have found that New York City and its various agencies are not "employer[s]" under the LMRA. See, e.g., Cunningham v. Local 30, Int'l Union of Operating Eng'rs, 234 F. Supp. 2d 383, 391 (S.D.N.Y. 2002); Naum v. City of New York, No. 94 Civ. 5747, 1996 WL 140305, *2 (S.D.N.Y. Mar. 28, 1996).

The Complaint does not address whether Local 1549 exclusively represents public employees.[11] The Local 1549

---

[11] The Complaint includes allegations that AFSCME represents both public and private employees, noting that most employees represented by AFSCME are in public service. (See Compl. ¶ 5.)

Constitution appended to the Complaint, however, states that Local 1549 represents "clerical and administrative employees in the Agencies of New York City." (Loc. 1549 Const., art. IV, § 1.) See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (courts have the power to make factual findings beyond the allegations in the complaint with respect to jurisdiction). Because Local 1549 represents only individuals working for New York City agencies – which are not considered employers under the LMRA – Local 1549 does not exist "for the purpose . . . of dealing with employers" and thus is not a "labor organization" under the LMRA. See 29 U.S.C. § 152; Rosenthal v. Roberts, No. 04 Civ 5205, 2005 WL 221441, at *7 (S.D.N.Y. Jan. 28, 2005) (recognizing that a local union that exclusively represents public employees cannot qualify as a "labor organization" as defined under the LMRA). As a result, Palladino has failed to show by a preponderance of the evidence that the Court has the authority to adjudicate his LMRA claim. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Accordingly, Palladino's LMRA claim (Count II) is **DISMISSED** without prejudice for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3); Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999)

("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

###    C.    LEAVE TO AMEND

Whether to grant leave to amend a complaint is "within the sound discretion of the district court." Broidy Cap. Mgmt. LLC v. Benomar, 944 F.3d 436, 447 (2d Cir. 2019); Fed. R. Civ. P. 15(a). "Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint." Obra Pia Ltd. v. Seagrape Inv'rs LLC, No. 19 Civ. 7840, 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").

Although Palladino has not requested leave to amend, upon careful consideration, the Court affords Palladino an opportunity to amend his Complaint to address the deficiencies of his LMRDA claim. See Tulino v. City of New York, No. 15 Civ. 7106, 2016 WL 2967847, at *7 (S.D.N.Y. May 19, 2016). Further, because the Court raised the issue of subject matter jurisdiction *sua sponte*, the Court also grants leave to amend the LMRA claim to afford Palladino an opportunity to cure the jurisdictional defects identified

above. See <u>N47 Assocs. LLC v. Alba Servs. Inc.</u>, No. 21 Civ. 3490, 2021 WL 2003126, at *3 (S.D.N.Y. May 19, 2021).

Palladino may file a motion for leave to amend, accompanied by a memorandum of law and a proposed Amended Complaint, within thirty (30) days of this Decision and Order. To the greatest extent possible, Palladino's memorandum of law must explain how the proposed Amended Complaint will sufficiently address the deficiencies identified in this Decision and Order. If Palladino does not file a motion for leave to amend, or if the motion is denied, this action will be dismissed with prejudice.

## IV. <u>ORDER</u>

For the preceding reasons, it is hereby

**ORDERED** the Complaint (Dkt. No. 4) of plaintiff Ralph Palladino ("Palladino") is **DISMISSED** without prejudice; it is further

**ORDERED** that the motion (the "Motion") (Dkt. No. 16) of defendants American Federation of State, County, and Municipal Employees and Carla Insinga to dismiss the Complaint is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Defendants' Motion to dismiss Palladino's claim for violation of 29 U.S.C. § 411(a)(5)(C) ("Count I") is **GRANTED**; it is further

**ORDERED** that Palladino's claim for violation of 29 U.S.C. § 185 ("Count II") is **DISMISSED** for lack of subject matter jurisdiction; it is further

**ORDERED** that Defendants' Motion to dismiss Count II is **DENIED** as moot; and it is further

**ORDERED** that Palladino may file a motion for leave to amend the Complaint, accompanied by a memorandum of law and a proposed Amended Complaint, within thirty (30) days of this Decision and Order. If Palladino does not file a motion for leave to amend the Complaint, or if the motion for leave to amend is denied, this action will be dismissed with prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 16.


**SO ORDERED.**

Dated:    13 May 2025
          New York, New York

                                    _____
                                         Victor Marrero
                                           U.S.D.J.